FILED
4/9/2015 5:00:47 PM
Donna G. Brown
District Clerk
Liberty County, TX
Joy Parker

NO. CV1509309

| | | |
|---|---|---|
| BRENDA BEAL | § | IN THE DISTRICT COURT OF |
| | § | |
| V. | § | LIBERTY COUNTY, TEXAS |
| | § | |
| TEVA WOMEN'S HEALTH, INC., a | § | |
| Delaware corporation; and TEVA | § | |
| PHARMACEUTICALS USA, INC., a | § | |
| Delaware corporation | § | 253rd  JUDICIAL DISTRICT |

## PLAINTIFF'S ORIGINAL PETITION

COMES NOW BRENDA BEAL, Plaintiff herein, complaining of TEVA WOMEN'S HEALTH, INC., a Delaware corporation; and TEVA PHARMACEUTICALS USA, INC., a Delaware corporation, Defendants herein, and for cause of action says:

### Discovery Level

Plaintiffs intend to conduct discovery under Level 1 of Rule 190 of the Texas Rules of Civil Procedure.

### Parties

1. Plaintiff Brenda Beal is, and at all times material hereto was, a resident of Liberty, Liberty County, Texas; and a citizen of Texas.

2. Defendant Teva Women's Health, Inc. ("Teva Women's") is, and at all times material hereto was a corporation organized under the laws of the State of Delaware, with its principal place of business in Missouri; and, therefore, is a citizen of Delaware and Missouri. Teva Women's may be served with process by serving its CEO, Larry Downey, at 901 E. 104th St., Suite 900, Kansas City, MO 64131-3457.

-1-

2

3. Defendant Teva Pharmaceuticals USA, Inc. ("Teva") is, and at all times material hereto was a corporation organized under the laws of the State of Delaware, with its principal place of business in Pennsylvania; and, therefore, is a citizen of Delaware and Pennsylvania. Teva may be served with process by serving its President, Allan Oberman, at 1090 Horsham Rd., North Wales, PA 19454-1505.

4. Teva Women's and Teva shall hereinafter, jointly and severally, be referred to as "Teva" or Defendant.

### Jurisdiction

This Court has jurisdiction over this lawsuit because the controversy made the basis of this lawsuit arose in the State of Texas, because the amount in controversy is within the jurisdictional limits of this Court, because the amount in controversy is $74,999 or less; and because each Defendant maintained sufficient minimum contacts with the State of Texas such that the exercise of jurisdiction over each Defendant by Texas courts would not offend traditional notions of substantial justice. This Court has both general and specific jurisdiction over each Defendant and this controversy.

### Venue

This Court possesses venue over this lawsuit because all or a substantial part of the events or omissions giving rise to the claim occurred in this county. Tex. Civ. Prac. & Rem. Code § 15.002(a)(1).

CERTIFIED COPY

### Amount in Controversy

Under the provisions of Rule 169 of the Texas Rules of Civil Procedure, Plaintiff affirmatively pleads she seeks only monetary relief aggregating $100,000 or less (specifically $74,999 or less) including damages of any kind, penalties, costs, expenses, pre-judgment interest, and attorneys fees. Thus, this lawsuit should proceed under the expedited process under Rule 169.

### Jurisdiction

This Court has jurisdiction over this lawsuit because all parties are citizens of the State of Texas, because the controversy made the basis of this lawsuit arose in the State of Texas, and because the amount in controversy is within the jurisdictional limits of this Court.

### Venue

This Court possesses venue over this lawsuit because:

1. All or a substantial part of the events or omissions giving rise to the claim occurred. Tex. Civ. Prac. & Rem. Code § 15.002(a)(1);

2. Defendant is not a natural person, and its principal office in the State of Texas is located in Harris County, Texas. Tex. Civ. Prac. & Rem. Code § 15.002(a)(3).

### Amount in Controversy

Under the provisions of Rule 169 of the Texas Rules of Civil Procedure, Plaintiffs affirmatively plead they seek only monetary relief aggregating $100,000 or less, including damages of any kind, penalties, costs, expenses, pre-judgment interest, and attorneys fees. Thus, this lawsuit should proceed under the expedited process under Rule 169.

CERTIFIED COPY

### Statement of Facts Applicable to All Counts

1. On April 29, 2009, Ms. Beal's gynecologist inserted a Paragard IUD into her at San Jacinto Methodist Hospital.

2. In November 2013, Ms. Beal began suffering pelvic pain and bleeding after intercourse. Ultrasound November 27, 2013 found the Paragard IUD abnormally low lying, located within the endocervical canal rather than in the endometrial canal. Dr. Reed informed Ms. Beal her IUD had moved, and referred her to a gynecologist, Dr. Spooner.

3. When Dr. Spooner attempted to remove the IUD, he discovered it had broken. He pulled the string to pull the IUD out, like he was supposed to, but only the tail came out. Only four-and-a-half years after the Paragrad IUD was placed, when it was to last 10 years, it had broken and moved. Dr. Spooner discarded the piece of IUD he removed.

4. At a later office visit, Dr. Spooner attempted to remove the remaining piece. However, it was far too painful for him to do; and he was unable to remove it.

5. On February 28, 2014, Dr. Spooner attempted to surgically remove the broken piece of the Paragard IUD at Kingwood Hospital. While he "yanked and yanked," he was not able to remove the broken piece of Paragard IUD. Unfortunately, the piece was too far imbedded for him to remove it. Dr. Spooner did "tie her tubes" during this procedure.

6. During a subsequent visit in his office, Dr. Spooner used a tool to attempt to remove the broken piece of the IUD, but was again unable to. Dr. Spooner simply is unable to remove the broken piece of the IUD.

-4-

7. On March 10, 2015, Kalpana Cadambi, MD removed the remaining piece of IUD from Ms. Beal at Bayshore Medical Center, which piece is now in the possession of Plaintiff's attorneys.

8. The broken Paragrad IUD caused, and the remaining piece, caused a sharp pain that went down Ms. Beal's left leg. She suffered excruciating pain whenever she tried to bend over, such as to pick something up off the ground. Ms. Beal was unable to either stand for very long, or walk very far, before she started suffering these sharp pains.

### Count One

For strict liability cause of action against Defendant, Plaintiff says:

1. Plaintiff adopts by reference each and every Paragraph of the Statement of Facts Applicable to All Counts of this Petition as if fully copied and set forth at length herein.

2. The IUD contained a manufacturing, design or marketing defect, more particularly set forth below.

*Manufacturing Defect*

3. The IUD may have contained a manufacturing defect.

4. The IUD may have deviated, in its construction or quality, from the specifications or planned output.

5. The IUD migrated and broke off in Plaintiff's body. Thus, it lacked adequate strength to withstand the normal forces experienced in connection with placing and removing such a IUD into the human body.

CERTIFIED COPY

6. As more particularly set forth below, Plaintiff invokes the doctrine of res ipsa loquitur as to whether the IUD contained a manufacturing defect.

*Design Defects*

7. The IUD contained one or more of the following design defects:

   (a) in containing inadequate strength to withstand the normal forces associated with placing such a IUD into the human body, and removing it;

   (b) in containing adequate safeguards to prevent it migrating

8. One or more of the following safer alternative designs for the IUD existed that would have prevented or significantly reduced the risk of Plaintiff's injury without substantially impairing the product's utility, and that was economically and technologically feasible at the time the IUD left Defendant's control by the application of existing or reasonably achievable scientific knowledge:

   (a) a design such that the IUD possessed adequate strength to withstand the normal forces expected with placing such a IUD into the human body;

   (b) a design containing safeguards that prevent migration.

*Unreasonable Dangerousness*

9. The manufacturing and marketing defects, or any of them, rendered the IUD unreasonably dangerous by making the IUD dangerous to an extent beyond that which would be contemplated by the ordinary consumer with the knowledge common to the community as to its characteristics.

10. The design defect or defects rendered the IUD unreasonably dangerous as designed considering the utility of the IUD and the risks involved in its use.

CERTIFIED COPY

*Producing Cause*

11. The above defects, or any of them, were producing causes of Plaintiff's injuries and damages, more particularly set forth below.

### Count Two

For negligence cause of action against Defendant, Plaintiff says:

1. Plaintiff adopts by reference each and every Paragraph of the Statement of Facts Applicable to All Counts of this Petition as if fully copied and set forth at length herein.

2. Defendant owed Plaintiff a duty of reasonable care. *Toshiba Intern. Corp. v. Henry*, 152 S.W.3d 774, 784 (Tex.App. -- Texarkana 2004, no pet.). Defendant owed Plaintiff a duty to exercise care to discover dangerous propensities of the IUD. *Toshiba Intern. Corp.*, 152 S.W.3d at 784. Defendant owed Plaintiff a duty to exercise ordinary care in the design, production (manufacture) and sale (marketing) of the IUD. *Toshiba Intern. Corp.*, 152 S.W.3d at 784.

3. Defendant breached the duties it owed to Plaintiff, failed to exercise ordinary care, and was negligent in the following particulars, among others:

   (a) the product was negligently manufactured, designed, or both, such that it broke off in Plaintiff's body and did not withstand the ordinary forces associated with placing such a IUD in the human body, and removing it

   (b) As more particularly set forth below, Plaintiff invokes the doctrine of res ipsa loquitur;

   (c) the product was negligently manufactured, designed, or both, such that it migrated.

CERTIFIED COPY

4. Each and every one of the foregoing acts or omissions, taken singularly or in any combination, proximately caused Plaintiff's injuries and damages, more particularly set forth below.

### Res Ipsa Loquitur

As a basis for application of res ipsa loquitur to this lawsuit, Plaintiff says:

1. Plaintiff adopts by reference each and every Paragraph of the Statement of Facts Applicable to All Counts of this Petition as if fully copied and set forth at length herein.

2. The character of the incident made the basis of this lawsuit was such that it would not ordinarily occur without negligence; and

3. The IUD was under the management and control of Defendant. Defendant was in control of the IUD at the time that the negligence (inferable from the incident made the basis of this lawsuit) occurred, so that the reasonable probabilities point to the Defendant and support a reasonable inference that Defendant was the negligent party.

4. Defendant has superior knowledge or means of information to determine the cause of the incident made the basis of this lawsuit.

5. By reason of the above and foregoing circumstances, among others, the jury is permitted to infer Defendant's negligence.

### Circumstantial Evidence of Defect

2. The malfunction that occurred ordinarily would not occur in the absence of a defect in the IUD. *Shaun T. Mian Corp. v. Hewlett-Packard Co.*, 237 S.W.3d 851, 862-863 (Tex.App. -- Dallas 2007, pet. denied).

CERTIFIED COPY

3. The circumstances provide a reasonable basis for concluding the defective condition did not arise subsequent to Defendant's exercise of control over the IUD. *Shaun T. Mian Corp.*, 237 S.W.3d at 863.

4. The likelihood of something other than a defect in the IUD is so reduced that the most probable cause of the malfunction was a defect in the IUD. *Shaun T. Mian Corp.*, 237 S.W.3d at 863.

5. Thus, the IUD was defective.

### Damages Applicable to All Counts

1. Plaintiffs adopt by reference each and every Paragraph of the Statement of Facts Applicable to All Counts of this Petition as if fully copied and set forth at length herein.

2. Plaintiffs hereby adopt by reference each and every Count of this Petition as if fully copied and set forth at length herein.

3. Plaintiff suffered sustained and incurred, and in reasonable medical probability will suffer, sustain and incur, the following injuries and damages as a producing or proximate result (or both) of Defendant's conduct, the defective IUD, or both, among others:

(a) physical pain;

(b) mental suffering;

(c) physical impairment;

(d) physical disfigurement;

(e) reasonable and necessary medical bills;

(f) loss of earnings/earning capacity;

CERTIFIED COPY

(g)  costs of court.

5.  The damages for which Plaintiffs seek recovery constitute compensation for personal physical injury, or personal physical sickness, within the meaning of Section 104(a)(2) of the Internal Revenue Code.

### Amount in Controversy

The amount in controversy in this lawsuit is $74,999, or less. The monetary relief Plaintiff seeks to recover is a maximum of $74,999.

### Discovery

Plaintiffs attach the following discovery to this Petition:

1.  Plaintiff's Request for Disclosure to Defendants. *Exhibit A*.

2.  Plaintiff's First Request for Admissions to Defendants, Interrogatories and Requests for Production to Defendants. *Exhibit B*.

### Jury Demand

Plaintiffs request trial by jury.

### Prayer

Plaintiffs pray that Defendant be cited to appear herein, and that upon final trial, Plaintiff has judgment against Defendant for:

1.  Compensatory damages in an amount above the minimum jurisdictional limits of the Court up to the amount of $74,999;

2.  Pre-judgment interest according to Texas law;

3.  Post-judgment interest according to Texas law;

4.  Costs of court;

CERTIFIED COPY

Respectfully submitted,
**Houssiere, Durant & Houssiere, LLP**

By: /s/ Randal Kauffman
Charles R. Houssiere, III
Attorney in Charge
State Bar No. 10050700
Randal A. Kauffman
State Bar No. 11111700
1990 Post Oak Blvd., Suite 800
Houston, Texas 77056-3812
Telephone: (713)626-3700
Facsimile: (713)626-3709

ATTORNEYS FOR PLAINTIFF

CERTIFIED COPY